UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MARSHA SOMERS,

                Plaintiff,

   - against -

AMERICAN AIRLINES, INC.,

                Defendant.
-----------------------------------------------------------X

MEMORANDUM
AND ORDER
05-CV-2814 (SMG)

*GOLD, S., U.S.M.J.*:

## Introduction

Plaintiff Marsha Somers ("Somers" or "plaintiff") alleges that she was injured on October 1, 2004, when she tripped and fell on a hole surrounding an exposed shutoff valve connected to a pipeline that services American Airlines, Inc., ("American Airlines" or "defendant") at John F. Kennedy International Airport ("JFK"). She brings this diversity action against defendant for failing to maintain or repair the allegedly defective condition. Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the ground that plaintiff cannot establish a *prima facie* case of negligence. More specifically, defendant contends that the undisputed evidence demonstrates that it did not own, control or derive a special use from the pipeline or property where plaintiff's accident took place. For the reasons that follow, defendant's motion for summary judgment is granted.

## Facts

The facts are construed in the light most favorable to Somers, the non-moving party, and they are derived from the parties' Local Rule 56.1 statements, and the exhibits, depositions and affidavits submitted by the parties in connection with the pending motion.

On the evening of October 1, 2004, plaintiff Somers allegedly sustained injuries when she tripped and fell on a hole surrounding an exposed shutoff valve and pipeline in a parking lot at JFK. Def. 56.1 ¶ 1, Docket Entry 55. The area where plaintiff fell, known as the "Red Lot," is owned, operated and controlled by the Port Authority of New York and New Jersey ("Port Authority"). *Id.* ¶ 10. The Red Lot is adjacent to Terminal 8, which is operated by American Airlines pursuant to the terms of a lease between the Port Authority and defendant.[1] *Id.* ¶¶ 9-10.

After plaintiff fell, a Smarte Carte airport employee notified the Port Authority police, and Port Authority representative Roy Williams arrived on the scene. *Id.* ¶¶ 3-4. As part of his duties as a non-aeronautical airport supervisor, Williams conducted visual inspections of all areas in the airport, including the Red Lot, and responded to emergencies. Declaration in Support of Defendant's Motion for Summary Judgment ("Def. Decl."), Docket Entry 54, Ex. G at 8-9. Williams issued two reports of the incident. The "Port Authority Patron Accident Report" indicates that on October 1, 2004 at 11:45 p.m. plaintiff was found sitting in the "Red Lot between rows 6 and 7" and that she was injured from stepping into a hole in the pavement. *Id.* Ex. C. Similarly, the "Kennedy Airport – Airport Operations Log" states that Somers tripped and fell over an exposed pipeline hole. *Id.* Ex. H. It further states that the Port Authority Maintenance Department "was called to the scene to identify the pipeline and cover the hole."[2] *Id.* The Port Authority applied a "cold patch temporary fix" to "prevent risk of further patron injuries until a proper cover could be set in place." *Id.* Ex. H. *See also* Def. 56.1 ¶ 5. There is

---

[1] The City of New York owns various parts of JFK airport and it leases some of its property to the Port Authority. Def. 56.1 ¶ 8. The Port Authority in turn leases property to other entities in the airport, such as American Airlines. *Id.*

[2] The report states that "69A" was called to the scene to repair the hole. Def. Decl. Ex. H. According to Williams' deposition testimony, 69A is a notation for a Port Authority maintenance supervisor. *See id.* Ex. G at 26.

no indication that American Airlines was notified of the incident at the time or that it made any of the subsequent repairs. Def. 56.1 ¶¶ 3, 5.

Plaintiff returned to the scene of the accident the following day to photograph the alleged defect, but the hole had already been filled with asphalt. Def. Decl. Ex. E ("Somers Dep.") at 108 & Ex. N (Page 1, top photograph). Plaintiff also obtained a diagram from American Airlines that appears to depict the underground pipelines in the Red Lot area. *Id*. Ex. O. Plaintiff has identified the location of the alleged defect on the diagram, and maintains that the pipeline that caused her accident is connected to a thermal distribution line that provides water to the terminals. *Id*.; Def. 56.1 ¶ 11.

Anthony Micieli, a utility database operator for the Port Authority, testified that the pipeline plaintiff identified is part of the Central Terminal Area and services all terminals at the airport. Def. Decl. Ex. M at 4, 36-37. Micieli further testified that Kennedy International Airport Cogeneration ("KIAC") is the entity that owns and is responsible for any repairs to the thermal distribution line, and that employees of American Airlines would have no reason to operate or use the shutoff valve where plaintiff fell. *Id.* at 37, 42; Def. 56.1 ¶¶ 11-12.

At the time of plaintiff's accident, American Airlines was doing construction on the terminals adjacent to the Red Lot. Lewis Walling, an American Airlines employee who supervised the project, testified that there was no actual construction work in the Red Lot, but that contractors used part of the Lot as a staging area for trailers and building materials. Def. Decl. Ex. F at 4-5, 19-20. Walling also testified that the contractors working on the American Airlines project did not do any excavation or repair work in the Red Lot. *Id*. at 23-24. Similarly, Donald Smith, Manager of Facilities Maintenance for American Airlines, stated in an affidavit that his department did not perform any maintenance or repair activities in the Red Lot at any

3

time prior to plaintiff's accident. Def. Decl. Ex. I ¶¶ 1, 13. Thomas Amoia, a resident engineer for the Port Authority, stated that, at the time of the incident, American Airlines was doing work in the Red Lot, including installing a canopy structure, rerouting pedestrian walkways and "patch restoration on the excavation they dug." *Id.* Ex. K at 3-8, 13, 18-19. Plaintiff testified that she observed construction in the street in front of the airport terminal, but not in the Red Lot. Somers Dep. at 30. She further testified that she did not see any construction materials, such as dumpsters or trucks, in the Red Lot. *Id.* at 30-31.

On April 19, 2005, Port Authority claims investigator Nichelle Gracey sent a "takeover" letter to defendant, advising defendant that plaintiff's claim fell within the provisions of defendant's lease with the Port Authority and requesting that defendant "handle [the claim] to a conclusion." Plaintiff's Memorandum in Opposition ("Opp. Mem.") Ex. 2. Gracey sent three subsequent takeover letters; each of the letters appears to have gone unanswered by American Airlines. The first three letters state that the location of the incident was "Parking Lot #8." *Id.* The last letter, dated September 26, 2005, includes a notation that the location of the incident was not Parking Lot #8, but was instead the Red Lot. It further states that "American Airlines was doing work at the location of the incident." *Id.* In addition, Gracey testified that the Port Authority's file on plaintiff's claim includes a note from another Port Authority employee stating that Amoia had determined from looking at plaintiff's photograph of the defect that it "looked like a cover for some sort of water system covering which American Airlines would have sole jurisdiction over." Opp. Mem. Ex. 1 at 26-27. The photographs were also shown to another Port Authority resident engineer at JFK who was unable to identify the object in the photo. *Id.* at 27.

4

**Discussion**

A. <u>Summary Judgment</u>

Summary judgment is appropriate where "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c). An issue of fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991). In reaching a summary judgment determination, the court must resolve ambiguities and draw reasonable inferences in favor of the nonmoving party. *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991). The moving party bears the initial burden of establishing that there are no genuine issues of material fact; once he does so, the non-moving party may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *Anderson*, 477 U.S. at 256; *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996). Mere conclusory allegations, however, are insufficient and "[t]here must be more than a 'scintilla of evidence'" to defeat a motion for summary judgment. *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252).

B. <u>Negligence</u>

Plaintiff's complaint asserts a single claim of negligence. To establish a *prima facie* case of negligence, Somers must demonstrate: first, that defendant owed her a duty; second, that defendant breached that duty; and, third, that plaintiff suffered the injuries of which she complains as a result of defendant's breach. *Vangeli v. Schneider*, 598 N.Y.S.2d 837, 839 (3d Dep't 1993). Plaintiff maintains that defendant owed her a duty of care because defendant

derived a special use from the dangerous condition, and/or that it created or had actual or constructive notice of the condition.

### a. Special Use

"Liability for a dangerous condition on property is predicated upon occupancy, ownership, control or a special use of such premises." *Balsam v. Delma Engineering Corp.*, 532 N.Y.S.2d 105, 108 (1st Dep't 1988). Plaintiff concedes that defendant did not own or control the Red Lot. Rather, plaintiff contends that defendant is liable for the defective condition based upon its special use of the shutoff valve and pipeline on which plaintiff tripped and fell.[3] In general, special use cases involve an object, such as the alleged shutoff valve at issue here, installed in a public space for the benefit of a private landowner. *See Minott v. City of New York*, 645 N.Y.S.2d 879, 881 (2d Dep't 1996). "The common thread in [special use] cases [is] an installation exclusively for the accommodation of the owner of the premises which he was bound to repair in consideration of private advantage." *Id*. (internal citations and quotation marks omitted). The duty to repair or maintain, however, is "necessarily premised . . . upon the existence of the abutting land occupier's access to and ability to exercise control over the special use structure or installation." *Kaufman v. Silver*, 90 N.Y.2d 204, 207 (1997).

Plaintiff acknowledges that the pipeline serviced all of the terminals in the airport and that KIAC was responsible for the "day to day functioning of the thermal distribution system." *See* Pl. 56.1 ¶¶ 11-12, Docket Entry 60. Plaintiff nevertheless maintains that defendant should be held liable because it derived a special benefit from the pipeline which "created a responsibility for defendant to exercise control over the area in question." *Id.* ¶ 12. She further claims that

---

[3] Defendant contends that plaintiff has not established that the alleged defect involved a shutoff valve connected to a pipeline that serviced American Airlines, and that summary judgment should be granted on the basis that the evidence that the pipeline serviced American Airlines is too speculative. *See* Def. Mem. 8-10. Because I grant summary judgment on other grounds, I do not reach this argument.

6

defendant had access to the defect based upon the fact that it was doing construction in the Red Lot area and based upon the takeover letters sent from the Port Authority to defendant.

Plaintiff's arguments are without merit. Merely deriving a benefit from the pipeline does not give rise to a corresponding duty, or even ability, to maintain or repair it. As discussed above, the beneficiary of a special use must also have access to and control over the area in order for the duty of care to attach. It is undisputed that the Red Lot was owned, operated and controlled by the Port Authority. It is also undisputed that KIAC was responsible for pipeline repairs. Although American Airlines was doing construction in the Red Lot area, there is no evidence that its construction work was being performed at or even near the location where plaintiff fell. Thus, the fact that American Airlines was involved in a construction project does not establish that it had control over or responsibility for the pipeline.

Likewise, the Port Authority's takeover letters do not raise a material issue of fact. First, the letters do not explain the basis for the Port Authority's conclusion that the accident took place at a location subject to American Airlines' control. To the contrary, all of the undisputed evidence indicates that the defective condition was the responsibility of the Port Authority and KIAC. Moreover, the suggestion in the takeover letters that American Airlines, not the Port Authority, would be responsible for any property defect, and in particular the note indicating that Amoia believed that defendant would have "sole jurisdiction" over the pipeline, are hearsay. *See* FED. R. CIV. P. 56(e). The parties have submitted transcripts of the depositions of Nichelle Gracey, the author of the letters, and of Thomas Amoia and Carleen Hodge-Morrison, two of the individuals identified during discovery as possible sources of the information that led the Port Authority to issue the takeover letters. *See* Opp. Mem. Exs. 1 & 3; Def. Decl. Exs. K & L. None

7

of these witnesses testified to personal knowledge of any facts indicating that American Airlines was responsible for the alleged defective condition.

Finally, the evidence establishes that the pipeline was not installed for the private advantage of American Airlines, but was in fact a benefit shared among *all* terminals in the airport. Although American Airlines may have benefited from the pipeline, its benefit was not exclusive, and it therefore had no duty to plaintiff to ensure that the area was in a reasonably safe condition.

    *b. Notice*

In the alternative, plaintiff argues that even though the area was outside of American Airlines' leasehold, defendant should nevertheless be held liable because it created or had actual or constructive notice of the defect. "It is well settled that in order to impose liability upon a landowner for injuries resulting from an allegedly defective condition, the plaintiff must establish that the landowner either created, or had actual or constructive notice of the defective condition." *Freeman v. Cobos*, 659 N.Y.S.2d 424, 425-26 (2d Dep't 1997).

Plaintiff is unable to demonstrate defendant's liability on this basis. Generally, notice is necessary, but not sufficient, to establish liability. It is undisputed that the Port Authority is the owner of the Red Lot, that it responded to the scene of the accident, and that it repaired the defect. Although plaintiff has presented some evidence that American Airlines was doing construction work in the general area, there is no evidence that it was doing work at or near the allegedly defective condition, that knew or it should have known about the defect, or that it had any duty to repair it. By contrast, defendant presented evidence that KIAC was the entity that owned and repaired the pipeline and that the Port Authority was the entity that would patrol and

8

inspect the Red Lot. Accordingly, plaintiff has not presented any evidence that would support a finding that defendant created or had notice of the defective condition.

## **Conclusion**

For all of the reasons stated above, defendant's motion for summary judgment is granted. The Clerk of the Court is directed to dismiss the case.

SO ORDERED.

/s/
**STEVEN M. GOLD**
**United States Magistrate Judge**

Dated:  Brooklyn, New York
April 13, 2010

U:\IRM 2008-2009\Somers v. American Airlines\somers v. american airlines_summary judgment_FINAL.docx